240 So.2d 767 (1970)
Frances HILBURN, Individually and as Tutrix of Joseph Farrell Hilburn and Sincerra Desiree Hilburn, Plaintiff-Appellant,
v.
Grover D. JOHNSON et al., Defendants-Appellees.
No. 11464.
Court of Appeal of Louisiana, Second Circuit.
June 29, 1970.
*768 Fish & Montgomery, by Roy Fish, Springhill, for appellant.
Lunn, Irion, Switzer, Johnson & Salley, by Richard H. Switzer and Jack D. Barnett, Shreveport, for appellee.
Before BOLIN, DIXON and WILLIAMS, JJ.
BOLIN, Judge.
Mrs. Frances Hilburn, individually and as tutrix of her minor children, filed suit *769 to recover damages for the injury and death of her husband, J. D. Hilburn. The injuries causing the death occurred when Hilburn's motorcycle struck the rear of a car, driven by Grover Johnson, throwing Hilburn and his vehicle to the pavement where moments later he was struck and dragged approximately 132 feet by an automobile driven by Herman Coleman. Made defendants were Grover Johnson, P. W. Coleman, individually and as administrator for his minor son, Herman Coleman, and Continental Insurance Company, insurer of the Coleman vehicle. Prior to trial Johnson was adjudicated bankrupt. On motion of his attorney he was dismissed from the case and is no longer a party to these proceedings. From judgment rejecting plaintiff's demands against Coleman and his insurer, plaintiff appeals.
The main question presented is whether the trial court erred in failing to find Herman Coleman guilty of negligence which was a proximate cause of Hilburn's death, and, if so, whether Hilburn was contributorily negligent.
It was stipulated the liability insurance policy issued by Continental covered the minor, Herman Coleman, at the time of the accident. It was further stipulated Mrs. Hilburn was the duly qualified tutrix of her minor children and that the life expectancy of the twenty-five year old decedent was 38.81 years as set forth in the Mortality Table, Louisiana Revised Statute 47:2405. A duplicate copy of the Continental policy, filed in evidence, reflects public liability limits of $5,000 for personal injury and $5,000 property damage for an accident involving one person.
We believe the trial court was substantially correct in stating the facts leading up to the tragedy in its written reasons for judgment.
The evidence shows that on the date in question Grover D. Johnson, who lived in Webster Parish on Louisiana Highway # 7 approximately 2.7 miles north of Dixie Inn, had been to Minden to a grocery store and was enroute to his home accompanied by his wife. His home is located on the west side of Highway # 7 which is a blacktop road running generally north and south. At the point of the accident in front of Johnson's house the road is straight, level and unobstructed for approximately 2.2 miles. The highway in this area is approximately 24 feet wide with shoulders from three to four feet wide. The accident occurred about 7:25 p. m. on March 30, 1968. The night was dark but the road was dry.
As Johnson proceeded in a northerly direction toward his home in his automobile he was overtaken by Marvin McCalman of Bradley, Arkansas, who was also proceeding in a northerly direction in his automobile enroute from Winnsboro, Louisiana to his home in Bradley, Arkansas. When Johnson approached the drive leading to his residence he engaged his left-turn blinker, gave a left-turn signal with his arm and turned into his driveway. As he was leaving the highway his automobile was struck in the rear by the motorcycle driven by Hilburn. Johnson and his wife testified that neither realized they had been struck by the motorcycle. They both testified they heard a loud noise and, after entering their driveway and stopping, got out to see what had happened. They saw the McCalman car stopped on the east shoulder of the highway and heard the noise of the motorcycle as it lay in the highway with its motor running but they could not see it.
About this same time Herman Coleman, 17 years of age, accompanied by Edgar Mangrum and Jerry Dale Lockey, each 16 or 17 years old, was driving his father's car south on Louisiana Highway # 7 approaching the scene of the accident. Upon seeing the lights of the vehicle approaching from the north, Johnson ran up the highway in that direction waving his arm in an effort to flag the car down. He had traversed approximately 70 running steps, or 70 yards, when the Coleman vehicle passed him.
*770 Young Coleman testified he was traveling between 60 and 65 miles per hour; that he saw Johnson waving his arm when he was about 90 feet away; that he took his foot from his accelerator and swerved to avoid hitting Johnson but did not apply his brakes until he observed the fallen motorcycle, by the light of his headlights, directly in his path. According to the evidence, he applied his brakes and skidded his tires approximately fifteen feet prior to impact; struck the motorcycle and rider and dragged both down the highway 132 feet before stopping.
The evidence shows further the sheriff's department and an ambulance were called to the scene and the injured Hilburn was taken first to the Minden Sanitarium where he was given emergency treatment by Dr. S. M. Richardson and sent by this doctor to Shreveport, but he died before arriving at the hospital in Shreveport.
Herman Coleman testified he saw the Johnson car in the driveway to his right but did not observe the McCalman vehicle, parked on the left shoulder, until after the accident when he got out of his car. He was asked if the lights of the parked vehicle were on, to which he answered he thought the parking lights were burning. We find the parking blinker lights were on.
McCalman testified he had not observed the motorcycle following and passing him until just before it struck the rear of Johnson's car. After that impact McCalman stated he alighted from his car to see if he could help the motorcycle rider but the motor was still running and, since it was so dark he could not see, he returned to his car to back it up in order to shine his headlights on the victim. Before he could accomplish this the second impact had occurred. McCalman, who was accompanied by his wife, daughter-in-law and small son, drove to the nearest house to report the accident and to leave his name and address. He testified he saw no light burning on the motorcycle prior to the first impact and that there was none after the impact.
We believe that when Herman Coleman observed Johnson 30 yards away, or approximately 100 yards from the motorcycle, flagging him, and saw the vehicle with its lights on parked in the driveway, he should have been alerted to possible danger and should have taken all precaution necessary to bring his car under control. He likewise should have seen the blinking warning lights on the McCalman car on his left. We conclude Coleman was negligent in that he continued to drive at the same rate of speed after he saw or should have seen these warnings. Whether this negligence was the proximate cause or a contributing cause of the decedent's death is a question which has caused the court some difficulty.
Defendants have specifically alleged Coleman was not negligent but that decedent's death was due to his own negligence. Alternatively, they allege decedent was contributorily negligent in causing the first accident, thereby putting himself in a place of danger, which negligence also contributed to the second accident.
With regard to the second accident we believe the evidence establishes Hilburn was unable to remove himself from the path of oncoming vehicles and as a consequence he was not contributorily negligent in causing the second accident.
We proceed now to the question of proximate cause. There were no witnesses who could testify as to decedent's condition after the first accident. Deputy Sheriff Bloxom was the first police officer to reach the scene after Hilburn and his motorcycle were struck by the Coleman car. He said the victim was under the Coleman car; that he and some men eased the car back approximately four or five feet off the body; that Hilburn was unconscious, bleeding badly about the head and one of his legs was broken. He testified further the victim was placed in an ambulance and taken to the Minden Hospital.
*771 Dr. Richardson, who attended the decedent upon arrival at the hospital, testified Hilburn had several fractured bones but he had such a severe skull fracture that brain matter could be seen coming from the skull; that he was bleeding profusely both from his ears and nose; that he remained unconscious for the approximately 20 minutes during which the doctor attempted to stem the flow of blood and protect Hilburn from shock.
When Dr. Richardson was asked if it appeared obvious Hilburn would die, he replied he didn't think he had much chance to live, but if he had any chance at all it would be because a brain surgeon could stop the bleeding from the brain. The doctor stated the decedent was still alive when he last saw him. He sent the patient in an ambulance to Shreveport and Hilburn was dead on arrival.
Dr. Stuart DeLee, Coroner of Caddo Parish, testified he did not perform an autopsy but gave the cause of death as crushing injuries to the head and chest with compound fracture of the skull and laceration of the brain.
Although neither doctor could state with certainty which trauma caused the death, it is certain Hilburn was alive when he was struck by the Coleman car and that he lived a short while thereafter. It is also established he was struck and dragged 132 feet and the car came to rest on top of decedent.
Plaintiff's attorney posed the hypothetical question to Dr. DeLee whether it would be possible for an automobile traveling fifty miles per hour to hit a body lying on the highway, drag it along the highway 132 feet and not do considerable physical damage to that body. Dr. DeLee answered that the victim would be seriously injured.
The general rule, followed in many jurisdictions and consistent with our jurisprudence, is found in 100 A.L.R.2d, pages 154 and 156. Essentially it is that a negligent driver who runs over or strikes a pedestrian after the pedestrian has been hit by another vehicle can properly be held liable for the pedestrian's death, under the theory that injuries received in both accidents contributed to or combined to cause the death, thereby entitling plaintiff to a joint and several recovery (in solido) for the entire damage from either or both of the negligent drivers. This rule would be applicable in the instant situation although Hilburn was not a pedestrian. No proof has been produced Hilburn was fatally injured in the first collision. Since he was alive after the second accident and died only a short time later and, in view of the severity of the blow inflicted by the Coleman automobile, we are convinced it is reasonable to conclude death was caused by defendant's negligence.
We find that if the second accident was not the sole proximate cause it was a contributing cause of the death of decedent and, though there may have been a pre-existing condition, i. e., injuries from the first accident, there was no intervening cause between the second accident and Hilburn's death.
Plaintiff has asked for a total award of $237,558.37 for herself and children. Mrs. Hilburn testified her husband was employed as a truck driver at approximately $400 per month. She also testified to the actual medical and funeral expenses totally $1267.92. Although there is insufficient evidence to establish with certainty the damages to which plaintiff is entitled, commensurate with defendant Coleman's ability to pay, we are convinced the damages will far exceed the policy limits.
The equitable rule, established in our law, allows a defendant to introduce evidence of his ability, or lack of ability, to pay a money judgment. The burden of establishing inability lies with defendant and, in fixing the quantum of the award, it is proper for the court to consider this evidence, together with plaintiff's evidence, in order to arrive at a fair and equitable assessment of the damages. See Cole v. *772 Sherrill (La.App. 2 Cir. 1942), 7 So.2d 205; Rollins v. New York Fire & Marine Underwriters, Inc. (La.App. 2 Cir. 1969), 225 So.2d 663 and cases cited therein.
For the reasons assigned the judgment is reversed and remanded to the lower court for the purpose of adducing proof of plaintiff's damages and of defendant Coleman's ability to respond in damages exceeding the policy limits, following which the court should render judgment in accordance with law not inconsistent with the views expressed herein.
Defendants are cast with all costs of the lower court and of this appeal.