Edwin V. GRIFFIN; June A. Griffin;
Troy C. Garren; and Eula Man
Garren, Plaintiffs,

v.

TENNECO RESINS, INC., individually
and as successor to Berkshire Color &
Chemical Co.; CIBA–GEIGY Corpora-
tion, individually and as successor to
American Color & Chemical Co.; E.I.
DuPont DeNemours Co.; Crompton &
Knowles Corporation; Synalloy Corpo-
ration; and Atlantic Chemical Corpora-
tion, Defendants.

Terry B. BLACKWELL, as Executrix and
Personal Representative of the Heirs
and Estate of James B. Blackwell, De-
ceased; and Clara F. Blackwell, indi-
vidually, Plaintiffs,

v.

TENNECO RESINS, INC., individually
and as successor to Berkshire Color &
Chemical Co.; CIBA–GEIGY Corpora-
tion, individually and as successor to
American Color & Chemical Co.; E.I.
DuPont DeNemours Co.; Crompton &
Knowles Corporation; Synalloy Corpo-
ration; and Atlantic Chemical Corpora-
tion, Defendants.

Thomas E. CANNON; and Janice
Cannon, Plaintiffs,

v.

TENNECO RESINS, INC.; CIBA–GEIGY
Corporation; E.I. DuPont DeNemours
Company; Crompton & Knowles Cor-
poration; Synalloy Corporation; At-
lantic Chemical Corporation; Mobay
Corporation; Pfister Chemical, Inc.;
and GAF Corporation, Defendants.

Civ. Nos. A–C–85–294, A–C–85–295
and A–C–85–155.

United States District Court,
W.D. North Carolina,
Asheville Division.

Dec. 1, 1986.

Jane N. Saginaw, and Lisa A. Blue, Bar-
on & Budd, Dallas, Tex., Smith, Patterson,
Follin, Curtin, James & Harkavy by Mi-
chael K. Curtis, Greensboro, N.C., for
plaintiffs.

Boyle, Alexander, Hord & Smith by Nor-
man A. Smith, and B. Irvin Boyle, Char-
lotte, N.C., for defendant Tenneco Resins.

Smith, Helms, Mulliss & Moore by By-
num Hunter, Stephen Millikin and Timothy
Peck, Greensboro, N.C., for defendants
CIBA–GEIGY and Crompton & Knowles.

O.E. Starnes, Jr., and Larry McDevitt,
Marla Tugwell, Asheville, N.C., for defend-
ant Atlantic Chemical.

Russell, Greene & King, P.A. by Sandra
M. King and J. William Russell, Asheville,
N.C., for defendant Synalloy Corp.

Kennedy, Covington, Lobdell & Hickman by Charles V. Tompkins, Jr. and Kiran H. Mehta, Charlotte, N.C., for defendant E.I. DuPont.

Charles A. Edwards and Andrew O. Whiteman, Graham & James, Raleigh, N.C., for defendant Pfister Chemical, Inc.

Parker, Poe, Thompson, Bernstein, Gage & Preston by Irvin W. Hankins, III, Charlotte, N.C., for defendant Mobay Corp.

Stryker, Tams & Dill, Newark, N.J., and Charles H. Mercer, Jr., Graham & James, Raleigh, N.C., for defendant GAF Corp.

## MEMORANDUM OF DECISION

SENTELLE, District Judge.

In each of these cases, one or more plaintiffs seeks to recover for personal injuries or death allegedly arising out of exposure to benzidine congener dyes manufactured by some or all of the named defendants. Each comes before the court on motions of defendants for dismissal or, alternatively, for summary judgment as to those parts of plaintiffs' claims based on theories of "alternative liability," "market share liability," and "enterprise liability." Defendants contend that these alleged theories create no claim upon which relief can be granted under applicable law. It appearing to the court that defendants are correct in this contention, their motions will be allowed.

### I.

In each instance, plaintiffs' complaint alleges a history of exposure to benzidine dyes manufactured by some or all of a group of defendants and harm resulting from this exposure. In the claims now under scrutiny, each plaintiff asserts that even if he is unable to establish specifically that a particular manufacturer produced a substance causing injury to the plaintiff, each manufacturer of a potential causative agent of the harm should be held liable or at least should bear the burden of proving

itself not the maker of a causative agent. Plaintiffs argue that in product liability cases of the sort before the court there are obstacles to the proof of product identification and legal causation that should prompt the court to allow plaintiffs to go forward with a cause of action based on collective liability against each of the manufacturers in the pool of potential tortfeasors even if plaintiffs are unable to determine which of the manufacturers of which particular products caused the plaintiffs harm. Plaintiffs offer three legal pegs upon which they pray the court to hang these claims for relief: alternative liability, market share liability, and enterprise liability.[1]

### A. Alternative Liability

Plaintiffs draw this first theory from the case of *Summers v. Tice,* 33 Cal.2d 80, 199 P.2d 1 (1948). In that bizarre fact situation, each of two hunters negligently fired toward plaintiff, who was unable to show which of them actually fired the bullet which struck him. The California court reversed traditional tort responsibilities and required each defendant to bear the burden of proving himself not to have been the responsible actor.

### B. Enterprise Liability

Plaintiffs draw this second theory from *Hall v. E.I. DuPont DeNemours,* 345 F.Supp. 353 (E.D.N.Y.1972). In that case, a federal court, attempting to apply New York law, held that where 13 plaintiffs were injured by exploding blasting caps in 12 separate incidents, and where plaintiffs could not identify the particular manufacturer producing the injurious cap in each case, all companies comprising the blasting cap industry and their trade association were proper defendants unless they could bear the burden of exonerating themselves.

### C. Market Share Liability

Plaintiffs base this theory on the California case of *Sindell v. Abbott Laboratories,*

[1]. At times plaintiffs' argument seems to use the term "alternative liability" as a collective one encompassing the other two named theories. However, since all three are pleaded separately and at times argued separately, the court will treat the complaints as attempting to state three separate bases for the claimed relief.

26 Cal.3d 588, 163 Cal.Rptr. 132, 607 P.2d 924, *cert. denied,* 449 U.S. 912, 101 S.Ct. 285, 66 L.Ed.2d 140 (1980). In that case, plaintiff alleged that she had been exposed *in utero* to DES. Since she could not identify the manufacturer (or manufacturers) of the particular drug causing her injury, she joined a group of DES manufacturers and sought to impose joint and several liability upon them all. The California court allowed the joinder of a body of defendants constituting a "substantial share" of the DES market at the time and place of plaintiff's exposure, employed the rationale of *Summers* to shift the burden of proof from plaintiff to defendants, and ruled that damages would be apportioned among the defendants on the basis of the share of the relevant DES market attributable to each.[2]

## II.

If these cases were being tried under the law of California, New York, or possibly Michigan, plaintiffs' arguments might be more persuasive. However, this is a diversity action arising in North Carolina, and the law of North Carolina will apply. *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Since the highest court of North Carolina appears not to have confronted the direct question of whether to apply the three theories advanced by plaintiffs, it is the duty of this court to forecast what that court would do were it presented these issues. *Meredith v. Winter Haven,* 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943). While this process has been at times referred to as an *"Erie* guess,"[3] in many cases, as in these, that "guess" can be an educated one. In these cases, as in *Thompson v. Johns-Mansville,* n. 3, *supra,* plaintiffs seek to impose liability based on what the *Thompson* court referred to as "radical departures from traditional theories of tort liability." *Id.,* at 583. In that case, the Fifth Circuit declined to adopt "for Louisiana ... a particular and

radical mode of ... expansion of its tort law." *Id.*

Like Louisiana, North Carolina has never adopted the exotic theories advanced by these product liability plaintiffs. While this court is at liberty, indeed obligated, to follow North Carolina law, not simply as it is in place but in the directions toward which it appears to be moving, *Meredith, supra,* in the area of tort liability there is no discernable trend along the path plaintiffs seek to have this court tread. Indeed, the existing analogous North Carolina authority is to the contrary. In *Elledge v. Pepsi-Cola Bottling Co.,* 252 N.C. 337, 113 S.E.2d 435 (1960), for example, this state's Supreme Court denied recovery to a plaintiff injured by a deleterious substance in a soft drink where she could not establish that the specific bottling company sued by her had in fact bottled the offending beverage.

In *Ryan v. Eli Lilly & Co.,* 514 F.Supp. 1004 (D.S.C.1981), Judge Chapman, considering the applicability of both North and South Carolina law to product liability cases, concluded that "the defendant manufacturer must be identified with the specific instrumentality allegedly causing the injury, and this is the law of both North and South Carolina." *Id.,* at 1006, *citing, inter alia, Elledge v. Pepsi-Cola Bottling Co., supra.*

Perhaps most convincingly, in the recent case of *Wilder v. Amatex Corp.,* 314 N.C. 550, 336 S.E.2d 66 (1985), the North Carolina Supreme Court was considering the applicability of this state's statute of repose to an asbestos disease plaintiff with similar product identification predicaments to those faced in the instant cases. While not directly confronting the question of alternative, enterprise or market share liability, that court reversed a summary judgment in favor of a defendant, not because

---

**2.** Plaintiffs also cite *Abel v. Eli Lilly & Co.,* 418 Mich. 311, 343 N.W.2d 164 (1984), another DES case in which the Michigan court apparently applied not the market share liability but a modified *Summers* theory of alternative liability

to impose joint and several liability on DES manufacturers.

**3.** *See, e.g., Thompson v. Johns-Manville Sales Corp.,* 714 F.2d 581, 584 (5th Cir.1983) (dissent).

the plaintiff did not have to show exposure to the defendant's products, but because he could show it. The court stated that it "agree[d] with defendants' contention that at trial plaintiff's evidence must demonstrate that he was actually exposed to the alleged offending products." *Id.*, 314 N.C. at 553, 336 S.E.2d at 68. While the *Wilder* case is not a unanimous opinion, the sole dissenting justice concurred in part and did so stating: "[T]he evidence in the plaintiff's forecast would tend to show exposure to that manufacturer's product...." *Id.*, 314 N.C. at 563, 336 S.E.2d at 73 (Meyer, J., dissenting).

In attempting to persuade this court that North Carolina precedent supports an expansion of tort law in the direction of California, New York, and Michigan, plaintiffs offer only *Phillips v. Hassett Mining Co.*, 244 N.C. 17, 92 S.E.2d 429 (1956); and *Brown v. Atlantic Coast Line Railroad Co.*, 208 N.C. 57, 179 S.E. 25 (1935), both of which are traditional joint tortfeasor cases imposing joint and several liability.[4] Plaintiffs' apparent argument is that this state's willingness to impose joint and several liability on joint tortfeasors should lead it to further impose joint liability under enterprise liability and market share liability theories. Another federal court facing similar arguments for the application of the same "novel theories" to the law of Georgia described "the industrywide or market share concept" as taking "a quantum leap toward 'render[ing] every manufacturer an insurer not only of the safety of its own products, but of all generically similar products made by others.'" *Starling v. Seaboard Coast Line R. Co.*, 533 F.Supp. 183, 190 (S.D.GA.1982), *citing Ryan v. Eli Lilly, supra.*

Insofar as the term "quantum leap" describes the magnitude of the exercise, this court would be conducting were it to move from the North Carolina precedents to these "novel theories," this court agrees with the District of Georgia. However,

insofar as "leap" may convey any implication of continuing movement along a current course, to move from the North Carolina precedent of *Elledge* and *Wilder* to the theories advanced by plaintiffs herein is something other than a quantum leap, but rather a quantum detour or perhaps knight's move, as it requires not only a quantum acceleration but also a marked charge in direction as well.

For the reasons set forth above, defendants' motions for dismissal are allowed by Order filed contemporaneously herewith.

---

4. Plaintiffs also cite *Booker v. Duke Medical Center*, 297 N.C. 458, 256 S.E.2d 189 (1979). That case, however, applies North Carolina's workers compensation statute to an occupational disease fact situation and has no applicability to the imposition of liability in common tort context.