643 So.2d 1291 (1994)
Arthur QUICK
v.
MURPHY OIL COMPANY, et al.
No. 93-CA-2267.
Court of Appeal of Louisiana, Fourth Circuit.
September 20, 1994.
*1292 Maria I. O'Byrne Stephenson, Lisa C. Matthews, Catherine I. Chavarri, Kathleen D. Lambert, Law Offices of Maria I. O'Byrne Stephenson, New Orleans, for third party defendant/appellant, Garlock, Inc.
Michael T. Cali, Darryl J. Foster, Lemle & Kelleher, New Orleans, for third party plaintiff/appellee, Owens-Corning Fiberglas Corp.
Dominic J. Ovella, Valerie T. Schexnayder, Hailey, McNamara, Hall, Larmann & Papale, Metairie, for The Flintkote Co./amicus curiae.
Before BARRY, KLEES and WARD, JJ.
BARRY, Judge.
Garlock, Inc. appeals a $46,000 judgment in favor of Owens Corning Fiberglas Corporation (OCF) for contribution in this asbestos litigation. We find no evidence that a product manufactured by Garlock substantially contributed to plaintiff's asbestosis and reverse.

FACTS
On January 26, 1981 Arthur Quick filed suit for damages due to asbestosis against OCF and numerous other defendants. Quick's claim was based on multiple theories of recovery including negligence and products liability. Several defendants were dismissed and Quick settled with others.
OCF settled with Quick for $92,000 and on June 16, 1990 OCF filed a third party demand against Garlock for contribution. The trial court found Garlock solidarily liable with OCF and rendered judgment against Garlock for $46,000. Garlock claims OCF failed to prove: (1) that Quick was exposed to any asbestos-containing product manufactured by Garlock; that Quick's exposure to any Garlock product was a cause in fact of his damages; that Quick's exposure constituted a substantial contributing factor in his illness; (2) OCF failed to prove that Garlock's product was unreasonably dangerous to normal use; and (3) Garlock is not liable for contribution because OCF did not pay more than its virile share. OCF filed a cross appeal because the trial court did not award interest. The Flintkote Company filed an amicus brief and argued the evidence was insufficient to prove exposure and causation.

STANDARD OF REVIEW
An appellate court has a duty to affirm the trial court's decision absent an error of law or fact. A trial court's finding of fact may not be set aside on appeal unless it is manifestly erroneous or clearly wrong. Stobart v. State, Department of Transportation & Development, 617 So.2d 880, 882 (La. 1993), citing Rosell v. ESCO, 549 So.2d 840 (La.1989). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong but whether the factfinder's conclusion was reasonable in light of the entire record. Stobart v. State, Department of Transportation & Development, supra. Although deference to the factfinder should be accorded, the appellate court has a constitutional duty to review facts and thus has "every right to determine whether the trial court verdict was clearly wrong based on the evidence, or clearly without evidentiary support." Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, 93-3110, 93-3112 (La. 7/5/94); 639 So.2d 216, 221.

EXPOSURE
Garlock argues that the trial court erred by finding it liable for contribution *1293 because the record does not establish that Quick was exposed to any Garlock product which contained asbestos.
The parties cite no Louisiana jurisprudence, and we have found none, which examines a plaintiff's exposure to asbestos under Louisiana's standard for appellate review of facts. However, there is analogous federal jurisprudence which provides guidance as to the relevant factors to be considered in the determination of that issue.
In Martin v. American Petrofina, Inc., 779 F.2d 250 (5th Cir.1985), modified on other grounds, 785 F.2d 543 (5th Cir.1986), cited by OCF in support of its argument that the record supports the finding that Quick was exposed to Garlock's products, the U.S. Fifth Circuit considered plaintiff's exposure to asbestos-containing mastics manufactured by Benjamin Foster (BF). The jury found the plaintiff was exposed, the district court denied BF's motion for a J.N.O.V. and the Fifth Circuit affirmed on that issue. The plaintiff in Martin, a pipefitter at Exxon in 1951 and from 1956-1961, did not recall whether he worked with BF products, but witnesses testified that BF products were used throughout the plant. A witness who did contract work for various companies including Exxon testified that he used BF mastics more than any other. The court applied the federal standard for sufficiency of evidence to sustain a J.N.O.V.[1] and held that "(t)here was sufficient evidence for a finder of fact to conclude that, more probably than not, the plaintiff was exposed to BF mastics." Id. at 252.
Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156 (4th Cir.1986), evaluated the sufficiency of the evidence as to exposure in order to determine whether a reasonable inference of causation was established at the close of plaintiff's case. The U.S. Fourth Circuit affirmed directed verdicts for three defendants because the circumstantial evidence was insufficient to show there was contact with defendants' products or to raise an inference of exposure necessary to support a finding of causation under Maryland law (i.e., that the plaintiff's exposure to the defendant's product was a "substantial factor" in plaintiff's harm). As to two defendants, there was evidence that their products were at plaintiff's workplace (a shipyard), but there was no testimony that plaintiff was exposed. Plaintiff testified that he was exposed to a third defendant's product on ten to fifteen occasions for one to eight hours over a 39 year period. The court held that plaintiff's contact with the defendant's product was insufficient under the "de minimus" rule:
To support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked.
The court reasoned the "de minimus" rule was reasonable considering Maryland's substantial causation doctrine, the unusual nature of asbestos related disease, the size of plaintiff's workplace (a shipyard) and testimony that 30 days exposure was an insignificant causative factor of asbestosis.
Although the substantial causation principle is applicable to determine cause in fact in Louisiana when multiple causes are present, see discussion infra, this Court is reviewing the trial court's finding of fact under a manifest error standard after trial on the merits and Lohrmann is not applicable to these facts.
Quick testified that he worked with asbestos insulation products from 1940-1955. The insulation required cutting which, according to Quick, created clouds of dust that covered his clothes and clogged his nose. Garlock did not manufacture that insulation.
Quick worked as an insulator for Murphy *1294 Oil from 1955-1980.[2] He worked with gaskets (the seal between two flanges) and valve packing (material placed in valves to prevent leakage through the valve stem). Work with gaskets entailed removing old gasket material with a scraper or wire brush and cutting a new gasket from a sheet of material. Quick testified that changing a gasket did not create visible dust. Work with valve packing often entailed removal of old packing with a corkscrew-like tool. Quick testified that packing created "a little bit" of dust.
Quick recalled working at Murphy Oil with gaskets which contained asbestos but did not recall the manufacturer. Quick testified that valve packing at Murphy Oil contained asbestos and he worked directly and near others who used valve packing. Quick said that he used Garlock packing but did not know which style numbers he used. He did not know the manufacturer of the old valve packing or gaskets he removed.
OCF introduced into evidence two purchase requisition forms from Murphy Oil dated 2-14-69 and 6-30-70 which each contained an order for five pounds of Garlock packing Style No. 5875 and corresponding delivery receipts and invoices to Murphy Oil. OCF also submitted four delivery receipts and four invoices which apparently correspond to a purchase requisition form (not in evidence) that ordered Garlock packing Style No. 5889. According to Garlock's answers to interrogatories which were admitted into evidence, packing Style No. 5875 contained 50% by weight asbestos but Style No. 5889 did not contain asbestos.
The only evidence of Garlock's products which contained asbestos at Murphy Oil were purchase requisition forms dated 2-14-69 and 6-30-70 and corresponding delivery receipts and invoices for a total of ten pounds of Style No. 5875 Garlock packing. Quick did not know if he worked with or near others who used Garlock asbestos-containing packing. However, Quick testified that he was the classified insulator at Murphy Oil until he was named permanent supervisor in 1978 and the evidence shows that Garlock Style No. 5875 packing was delivered to Murphy in 1969 and 1970.
The trial court was not clearly wrong in finding that Quick was more probably than not exposed to Garlock asbestos-containing packing.

CAUSE IN FACT
Garlock argues that it is not liable because exposure to its asbestos-containing products was not a cause in fact of Quick's damages. Because Garlock packing Style No. 5875 was the only asbestos-containing product which Quick was shown to have been exposed, our analysis focuses on that product.
When evaluating liability in an asbestos claim, we apply traditional theories of tort liability (for example, negligence and products liability) which require proof of causation. See Cole v. Celotex Corp., 599 So.2d 1058 (La.1992); Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986); Thompson v. Johns-Manville Sales Corp., 714 F.2d 581 (5th Cir.1983), cert. den. 465 U.S. 1102, 104 S.Ct. 1598, 80 L.Ed.2d 129 (1984). Asbestos cases typically involve multiple defendants and courts have analyzed the cases under concurrent causation, a doctrine which "proceeds from the assumption that more than one defendant substantially contributed to the plaintiff's injury." 210 E. 86th Street Corp. v. Combustion Engineering, Inc., 821 F.Supp. 125, 150 (S.D.N.Y. 1993).[3] In Thompson v. Johns-Manville Sales Corp., 714 F.2d at 583, the U.S. Fifth Circuit rejected other theories of liability such as alternative liability and enterprise liability as "beg[ging] the question of causation" and "dispens[ing] with particular proof of causation." Id. at 583.[4]
*1295 The first element of proof under either negligence or products liability is causation. See Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Weber v. Fidelity & Casualty Insurance Co. of N.Y., 259 La. 599, 250 So.2d 754 (1971); Charles v. Bill Watson Hyundai, Inc., 559 So.2d 872 (La.App. 4th Cir.), writ den. 563 So.2d 1154 (La.1990).
The concept of causation in Louisiana has been developed in negligence actions. However, the products liability action is in tort and concepts of cause in fact and proximate cause are applicable. William E. Crawford, 12 Louisiana Civil Law Treatise, § 433, at 238 (Supp.1994).[5]
In Dixie Drive It Yourself System v. American Beverage Co., supra, the Supreme Court stated that "conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm." Id., 137 So.2d at 302. The court stated that negligent conduct is a substantial factor if the harm would not have occurred without the conduct, i.e., but for defendant's conduct, plaintiff would not have sustained injury. The court thereby equated the two concepts of substantial factor and necessary antecedent. Malone, Ruminations on Dixie Drive It Yourself Versus American Beverage Company, 30 La.L.Rev. 363, 373 (1970).
Courts which have evaluated cause in fact since Dixie Drive It Yourself System v. American Beverage Co. have applied the "but for" and substantial factor tests alternately and in combination to determine cause in fact. See Thomas v. Missouri Pacific Railroad Co., 466 So.2d 1280, 1285 (La.1985) ["Conduct is a cause in fact of harm to another if it was a substantial factor in bringing about that harm."]; Sinitiere v. Lavergne, 391 So.2d 821 (La.1980) ["but for" test applied to determine cause in fact]; Burdis v. Lafourche Parish Police Jury, 618 So.2d 971, 975 (La.App. 1st Cir.), writ den. 620 So.2d 843 (La.1993) ["Cause in fact is usually a `but for' inquiry which tests whether the injuries would not have occurred but for defendant's ... conduct or if the defendant's conduct is a substantial factor in bringing about the injuries"]; Smith v. English, 586 So.2d 583, 588 (La.App. 2d Cir.), writ den. 590 So.2d 80 (La.1991) [to establish cause in fact the "plaintiff must show that he would not have suffered the injuries ... but for the defendant's conduct.... The plaintiff must show that the defendant's conduct was a `substantial factor' in bringing about the harm."].
The Louisiana Supreme Court recently stated that cause in fact is usually a "but for" inquiry which tests whether the harm would not have occurred but for the defendant's substandard conduct, and the substantial factor inquiry is an alternative method of analysis used when two or more combined causes are present. Fowler v. Roberts, 556 So.2d 1, 5 n. 6 (La.1989), reh. granted on other grounds and original opinion reinstated as supplemented, 556 So.2d at 13 (La.1990), superseded by statute on other grounds as stated in Persilver v. Louisiana Department of Transportation, 592 So.2d 1344, 1347 n. 2 (La.App. 1st Cir.1991). The substantial factor inquiry is applicable to this case because two or more causes are present.
Garlock asserts its product was not a cause in fact of Quick's harm because the *1296 product was not a substantial factor and did not bear a substantial relationship to that harm. Garlock argues that a finding that its conduct or product was a contributing factor is insufficient to support liability. In response, OCF argues that the "but for" or substantial factor test should not be applied to any single factor in a concurrent cause case but rather should be applied to all factors in combination.
OCF cites In re Manguno, 961 F.2d 533 (5th Cir.1992). The court ordered a new trial because the jury had been instructed that plaintiff's exposure to asbestos "may be a cause, so long as it can reasonably be said that, except for the asbestos exposure, the injury complained of would not have occurred." The court stated that "a `but for' definition of causation is inappropriate in a concurrent cause Louisiana tort action." Id. at 535. The court found that the erroneous charge "cuts to the heart of the legal issue in this case," reversed the judgment for the defendants and remanded.
In re Manguno rejected the "but for" test in a concurrent cause of action but did not reject the substantial factor requirement. Significantly, the jury charge in that case stated:
An injury is caused by the defendant's product when it appears that the exposure to asbestos contributed a substantial part in bringing about or actually causing the injury, disease or damage and that the injury, disease or damage was either a direct result of or the product of a natural and continuous sequence produced by the asbestos exposure.
Id. at 534 [emphasis added]. The court did not reject that portion of the charge or intimate that it was erroneous.
OCF suggests that an appropriate test might be: "When the conduct of two or more actors is so related to an event that their combined conduct, viewed as a whole, is a but for cause of the event, and application of the but for rule to them individually would absolve all of them, the conduct of each is a cause in fact of the event," citing an alternative formulation suggested in Prosser and Keeton on Torts, 5th ed. (1984). This is not a case where application of the "but for" or the substantial factor test would absolve all defendants. Plaintiff settled with some defendants (including OCF) and the issue is contribution between OCF and Garlock, a third party defendant.
Under Louisiana and applicable federal jurisprudence, Quick's exposure to Garlock asbestos-containing products must constitute a substantial factor in causing his asbestosis.
OCF introduced the testimony of Matthew Carmel, an expert in industrial hygiene, who tested the release of asbestos fibers from asbestos-containing gaskets and packing. Carmel tested gasket material labeled Garlock 900 and determined that cutting a gasket sheet and punching holes in Garlock 900 gaskets emitted asbestos levels above the OSHA permissible exposure limit. Garlock contests the validity of those measurements on several grounds, including the method used to compare the figures to the OSHA standard which is based on an eight hour time weighted average; that old valves of unknown origin were used in the tests and Carmel could not state whether the emitted fibers came from those valves or from gaskets being tested; and Carmel did not personally confirm the authenticity of the tested product. Nonetheless, Quick testified that he could not recall the manufacturer of the gaskets he used and there was no evidence that Quick worked with Garlock gaskets or that Garlock gaskets were used at Murphy Oil. Carmel also tested valve packing but did not know the manufacturer of the tested product. Thus, Carmel's tests have no probative value.
Carl Mangold, an expert in industrial hygiene, testified for Garlock. Mangold participated in a 1978 U.S. Navy study on the use and handling of asbestos gaskets, including Garlock, which included removal of old gaskets by scraping and wire brushing. The concentrations of asbestos emissions were below the threshold values established by OSHA and it was determined that the material presented no health hazard. There was no evidence or testimony that Quick worked with any asbestos-containing Garlock gaskets. Mangold also tested Garlock valve packing Style Nos. 5862 and 733 which had emission *1297 levels of .005 fibers per cubic centimeter, far below the OSHA standard of .2 fibers per cubic centimeter. The evidence does not show the percent of asbestos contained in those products. There was no evidence that Quick was exposed to those numbers of Garlock valve packing and no evidence of emission levels from Garlock valve packing Style No. 5875 to which Quick was exposed.
Dr. Hans Weill, an expert in pulmonary medicine who works with asbestos related diseases testified that asbestosis is a "dose response" related to the cumulative exposure to asbestos over a person's work life. He stated that all occupational exposure could be considered a contribution to the disease "in the sense that all exposures make up part of the cumulative exposure," and testified that a contribution would be more than a trivial exposure. Dr. Weill did not define "trivial exposure," but would not discount a particular exposure based on it being under the OSHA permissible exposure limit.
Dr. Weill testified that an individual who is not occupationally exposed to asbestos might have as many as one million fibers per gram of dry lung weight from environmental levels of asbestos in the air but is not at risk of developing asbestosis. He testified that a healthy adult male has 30-40 grams of lung tissue. This is consistent with Mr. Mangold's testimony that ambient air tests of background levels of asbestos fibers ubiquitous to the environment in various cities generally resulted in .02 fibers per cubic centimeter. Dr. Weill also testified that a person exposed to .2 fibers per cubic centimeter or less for eight hour days during the person's work life is not likely to develop asbestosis. Dr. Weill further testified there are epidemiological studies to show insulation-related asbestosis, but he is unaware of any study which shows gasket or valve packing-related asbestosis. Thus, the testimony established that not every asbestos exposure constitutes a substantial contributing factor to asbestosis.
Quick worked with asbestos-containing insulation from 1940-1955 which, when cut, emitted excessive clouds of dust that Quick testified covered his clothes and clogged his nose. That insulation was not manufactured by Garlock. The evidence as to Quick's exposure to asbestos-containing products manufactured by Garlock clearly establishes that exposure was trivial. The record supports a finding that Quick was exposed to ten pounds of asbestos-containing Garlock valve packing Style No. 5875 in 1969 and 1970. There is no evidence of the asbestos emission levels from that valve packing, which is significant since the record establishes that not all Garlock valve packing contains asbestos.
Emission levels from other Garlock asbestos-containing packing were far below permissible limits. There is no evidence that Quick was exposed to any other asbestos-containing products manufactured by Garlock. Dr. Weill testified there is a "very high" probability that Quick would have developed asbestosis without exposure to gaskets or valve packing (not specifying any particular brand). Based on the entire record, Quick's exposure to Garlock asbestos-containing products was not a substantial cause of his asbestosis. The trial court was clearly wrong to conclude otherwise.

CONCLUSION
Because the record clearly establishes that Quick's exposure to asbestos-containing products manufactured by Garlock was trivial, it was not a substantial contributing factor in Quick's asbestosis and was not a cause in fact of that harm. The remaining issues are pretermitted.
The $46,000 judgment for contribution against Garlock and in favor of OCF is reversed.
REVERSED.
NOTES
[1] The Court explained the standard:

If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict, granting of the motion was proper. If, however, the evidence is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the jury's verdict should remain intact.
Martin, 779 F.2d at 251.
[2] According to Quick, he was hired in 1955 by Ingram Oil & Refining Company, which was bought out in 1962 by Murphy Oil.
[3] Different theories of recovery were discussed in the magistrate judge's Report and Recommendation which was adopted by the district judge in 210 E. 86th Street Corp. v. Combustion Engineering, Inc., 821 F.Supp. at 148-50.
[4] The problems associated with application of traditional tort doctrine to asbestos cases were recognized in Thompson. The "factual predicate giving rise to potential liability in asbestos cases is different than those which generated most tort doctrines, and proof of causation could be a monumental task." Id., 714 F.2d at 583-84 (Goldberg, J., dissenting). The Louisiana Supreme Court recognizes that application of traditional tort concepts to asbestos cases can be problematic, but applies traditional theories of liability. Cole v. Celotex Corp., 599 So.2d 1058 (La.1992). In Cole, the court defined "event" in asbestos exposure to determine whether the plaintiff's cause of action arose before or after the enactment of comparative fault in Louisiana.
[5] In discussing liability under the 1988 Louisiana Products Liability Act, Professor Crawford states at p. 238:

Circumstances or conduct that will trigger liability of a manufacturer under the Act constitute fault under Louisiana Civil Code article 2315, so that the products action against the manufacturer continues to be in tort. Thus, all the peripheral characteristics of tort actions not specifically governed by the Act continue to be applicable, such as ... cause in fact, proximate cause, in solido liability, and others not inconsistent with the specific provisions of the Act.
The Louisiana Products Liability Act, LSA-R.S. 9:2800.51 et seq., effective September 1, 1988, is not retroactive and does not apply to this case. Gilboy v. American Tobacco Co., 582 So.2d 1263, 1264 (La.1991).