CHARLES R. JONES, Judge.
hThe appellants seek review of a district court judgment which granted the appel-lees’ motion for summary judgment. We affirm.
One of the named appellants, Marie Thi-bodeaux, has died. She and her husband, Ken Thibodeaux, alleged that the cause of her illness and subsequent death occurred as a result of contracting an asbestos-related disease, mesotheiloma, a type of cancer of the lining of the lungs.
The Thibodeauxs filed suit on December 11, 2002, in the Civil District Court for the Parish of Orleans[1] alleging personal injuries as a result of their exposure to asbestos. The petition named a total of fourteen (14) defendants, and after a number of supplemental petitions, a total of eighteen (18) parties were named as defendants. The defendants were comprised of Mrs. Thibodeaux’s employers, premises owners, and various manufacturers, producers, and suppliers of asbestos-containing products as well as the insurers of some of these parties.
In their petition for damages, the Thibo-deauxs alleged that Mrs. Thibodeaux contracted mesothelioma after being exposed to asbestos-containing products through *861 both her husband’s and father’s clothing. The petition alleges that her |2father and husband worked at the following locations: Johns-Manville; Louisiana; Todd Shipyards; Avondale Industries; Southern Pacific Railway; and Pipeline Services, Inc. The Thibodeauxs alleged that all of these named defendants have a domicile in either Jefferson or Orleans Parishes.
The Thibodeauxs also claimed that Mrs. Thibodeaux was exposed to asbestos while she lived in the Windmill Mobile Home Park, and while she was a student and nurse at Charity Hospital in New Orleans, and also while she was a nurse at the Lallie Kemp Hospital.
Two of the named defendants involved in this appeal are Eagle Asbestos & Packing Company, and its insurer, OneBeacon America Insurance Company. Eagle is the alleged seller, installer, and remover of asbestos containing products at Charity Hospital in New Orleans and at the Lallie Kemp Hospital.
On March 10, 2005, Eagle and OneBea-con filed a motion for summary judgment requesting that the district court dismiss it from the case. They argued for dismissal from the case on the basis that: 1) the Thibodeauxs could not produce evidence that Eagle supplied or used any asbestos-containing materials at the exposure sites; and, 2) that Mrs. Thibodeaux’s exposure to Eagle’s asbestos-containing products was not a substantial factor in causing her mesothelioma.
On April 21, 2005, the Thibodeauxs filed an opposition to Eagle and OneBeacon’s motion for summary judgment. In their opposition memo, they submitted evidence that they alleged showed the existence of specific facts which established a genuine issue of material fact and asserted that Eagle and OneBeacon |swere not entitled to summary judgment. Specifically, they asserted: 1) that Mrs. Thibodeaux was exposed to asbestos while attending nursing school at and employed at Charity Hospital New Orleans and while working at Lallie Kemp Hospital; and 2) Eagle Asbestos and Packing Co., now known as Eagle, Inc., was a seller, installer, and remover of asbestos-containing materials at Charity Hospital New Orleans and Lal-lie Kemp Hospital.
The hearing for the motion for summary judgment was held on April 29, 2005. At the conclusion of the hearing, the district court ordered the plaintiffs to supplement their opposition with evidence that Mrs. Thibodeaux was exposed to asbestos-containing materials manufactured, supplied, or installed by Eagle, within five (5) days.
In response, the Thibodeauxs hand-delivered correspondence to the district court, dated May 4, 2005, in which they indicated that no additional submission of evidence would be filed since all of the evidence necessary to defeat the motion for summary judgment had already been provided to the court.
Subsequently, the district court granted Eagle’s and OneBeacon’s motion for summary judgment on May 16, 2005. The Thibodeauxs requested that written reasons for judgment be provided by the district court.
In its reasons for judgment, the district court indicated that it granted Eagle’s and OneBeacon’s motion for summary judgment on the ground that the “plaintiff failed to offer evidence demonstrating that Marie Thibodeaux was exposed to asbestos containing materials manufactured, supplied, or installed by Eagle, Inc.”
This timely appeal followed.
In their sole assignment of error, the Thibodeauxs allege that the district court erred in granting Eagle’s and OneBeacon’s motion for summary judgment. |4They re *862 quest that this Court reverse the district court judgment and remand the case to the district court for a trial on the merits.
DISCUSSION
The appellate court reviews summary judgments de novo under the same criteria governing the trial court’s consideration of whether summary judgment is appropriate. Shambra v. Roth, 04-0467, p. 2 (La.App. 4 Cir. 9/29/04), 885 So.2d 1257, 1259. Accordingly, a motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
Summary judgments are favored and factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and all doubt must be resolved in the opponents favor. Willis v. Medders, 00-2507, p. 2 (La.12/08/00), 775 So.2d 1049, 1050; Independent Five Insurance Co. v. Sunbeam Corp., 99-2181, 99-2257, p. 17 (La.02/29/00), 755 So.2d 226; Berthelot v. Avondale Industries, Inc., 2002-1779, (La.App.4.Cir.02/26/03), 841 So.2d 91; writ denied, 854 So.2d 368.
The trial court cannot make credibility determinations on a motion for summary judgment. Independent Fire Insurance Co. v. Sunbeam Corp., 99-2181, 99-2257, p. 16 (La.02/29/00), 755 So.2d 226, 236. It is not the function of the district court on a motion for summary judgment to determine or even inquire into the merits of the issues raised. Additionally, the weighing of conflicting evidence has no place in summary judgment procedure. See also Knowles v. McCright’s Pharmacy, Inc., 34,559, p. 3 (La.App. 2 Cir. 4/4/01), 785 So.2d 101, 103.
|fiIn the instant matter, the appellants assert that the district court erred in granting summary judgment in favor of the Eagle and its insurer OneBeacon. The appellants assert that they did not fail to offer evidence demonstrating that Mrs. Thibodeaux was exposed to asbestos-containing materials supplied by Eagle. They assert that the evidence presented to the district court demonstrated that they were genuine issues of material fact that should be evaluated by a jury or the trier of fact to determine whether Mrs. Thibodeaux was exposed to Eagle’s asbestos-containing products.
Additionally, the appellants argue that “Eagle and OneBeacon have failed to produce any evidence to debunk the universally recognized causal relationship between asbestos exposure and mesothelioma. As this Court has acknowledged, ‘any’ exposure to asbestos above background is a causative factor in producing the disease.” Citing Torrejon v. Mobil Oil Co., 03-1426 (La.App. 4 Cir. 6/2/04), 876 So.2d 877.
However, the Torrejon case is distinguishable and the Thibodeauxs’ reliance on this case is misplaced. In Torrejon, the widow of a merchant mariner, who appeared individually and as personal representative of her husband’s estate, brought a wrongful death action against the vessel owner and the asbestos manufacturers after her husband died from mesothelioma caused by asbestos exposure. Following settlements and dismissals, the vessel owner was the only remaining defendant at time of trial. Following a jury trial, district court entered a judgment on the jury verdict for the vessel owner, but granted the widow’s motion for judgment notwithstanding the verdict (JNOV) and awarded general and special damages. The vessel owner appealed. This Court affirmed the *863 district court [¿judgment and held, inter alia, that the mariner’s exposure to asbestos on the vessel was a cause of his meso-thelioma. Id., p. 14, 876 So.2d at 887-888.
However, contrary to what the Thibo-deauxs allege, this Court, in Torrejon did not hold that the standard in an asbestos case was that “any” exposure was sufficient to prove causation. On the contrary, this Court clearly noted that in Torrejon, the matter was brought under the Jones Act,[2] thereby making the level of causation different from that of other torts. In Tor-rejon, we stated that “[t]he legal standard regarding the level of causation under the Jones Act is different than that required for other torts ...” Id., p. 20, 876 So.2d at 891.
Additionally, the appellants also cite to Grant v. American Sugar Refining, Inc., 06-1180 (La.App. 4 Cir. 1/31/07), 952 So.2d 746, to support their contention that the appellants have satisfied the test for asbestos exposure, that is, that they have established sufficient exposure to Eagle’s asbestos containing products.
In Grant, the plaintiff, who was also the son of an employee of a sugar refinery, alleged that he contracted malignant meso-thelioma as a result of exposure to asbestos brought home on the work clothes of his father. The plaintiff brought suit against the company (Eagle[3]) that sold, installed and removed asbestos-containing insulation products at the sugar refinery. The company in turn filed a motion for summary judgment which was granted by the district court. The plaintiff appealed.
This Court, after de novo review, held that genuine issues of material fact were present as to whether the employee was exposed to asbestos containing products and whether the plaintiff was exposed to asbestos containing products |7which precluded the grant of summary judgment to the company. Particularly, this Court wrote:
We note at the outset that in asbestos cases there is a need to show that the plaintiff was exposed to the defendant’s asbestos product. To satisfy this burden, plaintiff submitted William Grant’s employment records, that place him at the Domino Sugar Refinery from approximately 1979 until 1983. Eagle does not contest this point, but argues that plaintiffs burden is to prove a specific exposure to asbestos and it asserts the employment records do not meet that burden here. We find at the very least Thelonius Grant creates a genuine issue of material fact by submitting an Amstar Corp. [Domino Sugar Refinery] Receiving Report dated September 8, 1982. This Receiving Report names Eagle as the contractor who satisfactorily completed a contract to perform the following:
1. Repair insulation on pit tank heads and rejacket — Bldg. 19-1— 250°F.
2. Insulate condensate lines on ground floor near pit tank — Bldg. 19-1 — 250°F.
3. Repair insulation on # 3 turbine exhaust steam expansion joint and stop valve — Bldg. 19-1 — 260°F. Insulate transfer line — 19-3—216°F.
4. Repair insulation on deaerator head (illegible symbol) P. — Bldg. 19-2 — 250°F.
*864 5. Rejacket # 1 boiler feedwater line and install blanket insulation on valves — Bldg. 19-2 — 275°F/600°F.
6. Repair insulation on # 1 boiler steam drum head and main steam line including new porta(illegible) blanket insulation for manway, safety valve and line flange — Bldg. 19-2— 430/600°F.
7. Repair boilers 2 through 6 insulation on rear main steam line — Bldg. 18-2 — 520°F.
8. Repair and rejacket feedwater line on boilers 2 through 6 and install portable |sblankets on drum heads— Bldg. 19-2 — 275/430°F.
9. Fabricate and install removable blankets insulation on # 1 boiler and drum bottom — Bldg. 19-2 — 430°F.
10. Insulate condensate system tank and pipe pump in Bldg. 20-1 — 212°F.
11. Insulate 1 1/2", 2", 3" and 4" condensate piping to condensate tank from liquid sugar heaters — Bldg. 20-l/2-215°F.
12. Insulate crystallizer heating system-blankets to be used for valves— Bldg. 21-6 — 240°F.
The work to be performed hereunder shall commence on 9/13/82 and shall be completed by 10/15/82.
Eagle contends that this Receiving Report is insufficient to establish William Grant’s exposure to asbestos because it references “insulation,” not asbestos. However, we find this report, when reviewed with the following circumstantial evidence, creates a genuine issue of material fact as to William Grant’s exposure to asbestos containing products. Eagle has brought forth no evidence to prove that William Grant could not have been exposed, nor has the defendant ever denied that Domino Sugar Refinery did have asbestos-containing materials. Without more, the fact that Mr. Grant’s father worked on a premises that had asbestos-containing products, raises a genuine issue of material fact as to whether Thelonius Grant was exposed. Nevertheless, plaintiff further bolsters his argument with more evidence.
Plaintiff submitted the deposition of Mr. Fred Schuber, Eagle’s President, who identified Mr. Leo Santana as one of several estimators working for Eagle. Plaintiff submitted Mr. Santana’s deposition concerning the asbestos-containing products Eagle carried. Mr. Santana’s deposition confirmed that Eagle had contracts with the sugar refinery, known to him as American Sugar or AmStar, and that Eagle used asbestos-containing Garlock sheet gaskets. Mr. Santana’s deposition further confirmed that Eagle did the insulation work at the sugar refinery | awhere Mr. Grant’s father worked in the forties, fifties, and sixties. Plaintiff submitted the deposition of Mr. James Donald “Don” Roussel, an engineer at the Domino Sugar Refinery from 1955 to 1960 (as utility superintendent) and from 1968 to 1990 (as power superintendent). Mr. Roussel testified that the pipefitting foreman would inspect the plant, specifically checking pipes, and if the foreman observed nicks in the insulation, he would report it to Mr. Roussel, who would write a purchase requisition.
In regard to the insulation contractor who would supply materials and labor, Mr. Roussel testified that Eagle was the only contractor he recalled doing insulation work at the plant. Later in Mr. Roussel’s deposition, he quantified Eagle’s presence at the Domino Sugar Refinery, stating that he recalled Eagle performing 90% of the insulation work at Domino.
In addition, plaintiff submitted Mr. Kenneth Joseph Dufour’s deposition. Mr. *865 Dufour worked at Domino Sugar from 1965 to 2001 as a forklift operator in Warehouse & Shipping; a maintenance mechanic, doing repairs on equipment and machinery throughout the whole plant; and as a utility mechanic in the boiler house.
In regard to insulation work at the plant, Mr. Dufour testified that Eagle was the only contractor that did insulating in the plant in addition to Mr. Lem-oine, who was a Domino insulator who did minor jobs. Mr. Dufour testified that asbestos was in the plant the entire time he worked there. He also recalled that Eagle did stenciling on pipes indicating the presence of asbestos. Finally, Mr. Dufour stated that Eagle removed asbestos from the Pan House and that Eagle supplied insulation to the plant.
Plaintiff also submitted Mr. Pete Mar-aia’s deposition. He was a staff engineer at Domino Sugar beginning in 1974 and was assigned to the Arabi refinery beginning in 1982. Mr. Maraia stated that asbestos was located in the Char House and the Pan House. Mr. Maraia relates that Eagle would inspect the insulation at the plant when he or his supervisor decided it was needed. Mr. Maraia also stated that Eagle did the stenciling on the insulation to mark asbestos.
ImFinally, plaintiffs own deposition states that he washed his father’s work clothes while his father was employed at the sugar refinery.
Grant, 06-1180, pp. 5-8, 952 So.2d at 749-750.
We conclude that Grant is distinguishable from the instant case for several reasons. First, this Court clearly indicated that in Grant, the evidence submitted by the Mr. Grant, which included detailed employment records which place his father at the sugar refinery, were concurrent with the Receiving Reports which specifically place the insulation company, Eagle, at the sugar refinery at the same time of Mr. Grant’s father’s employment. Second, we found that Mr. Grant’s allegations were also supported by several affidavits which each corroborated his allegation that Eagle had contracts with the sugar refinery and had performed substantial insulation work with asbestos containing materials. The affidavits indicated that the company performed extensive insulation work, even going as far as stenciling the insulated pipes to identify the presence of asbestos. Third, we considered the deposition of Mr. Grant himself in which he testified that he washed his father’s work clothes while his father was employed at the sugar refinery.
Eagle and OneBeacon vigorously assert that although the Thibodeauxs maintained that there were numerous sources of exposure to asbestos, that they submitted insufficient evidence in their attempt to show Mrs. Thibodeaux’s exposure to asbestos-containing products at Charity Hospital. They note that the best evidence that the appellants were able to submit was a suggestion that Eagle may have supplied products which were used at Charity Hospital at some point in time between 1959 and 1984.
Eagle and OneBeacon also note that there was no production of evidence showing that Eagle supplied products to Charity Hospital between 1963 and 1966, which is the time when Mrs. Thibodeaux was employed at Charity. Eagle and OneBea-con also assert that there was no evidence whatsoever that Mrs. Thibodeaux was ever actually exposed to any products which were supplied, installed, or removed by Eagle.
Additionally, Eagle and OneBeacon cite to Vodanovich v. A.P. Green Industries, Inc., 03-1079 (La.App. 4 Cir. 3/3/04), 869 *866 So.2d 930, to support their argument that the district court was correct in granting its motion for summary judgment. In Vo-danovich, plaintiffs brought a wrongful death action, arising out of a longshoreman’s exposure to asbestos, and subsequent development of malignant mesotheli-oma, against vessel repair companies. The district court granted summary judgment in favor of the vessel repair companies. The longshoreman’s representative appealed. This Court held that the evidence was insufficient to establish a causal connection between the longshoreman’s exposure to asbestos fibers and the work of the vessel repair companies. Specifically, we noted:
To prevail, a plaintiff in an asbestos case must show, by a preponderance of the evidence, that he was exposed to asbestos from the defendant’s products, and that he received an injury that was substantially caused by that exposure. When multiple causes of injury are present, a defendant’s conduct is a cause in fact if it is a substantial factor generating plaintiff’s harm. Quick v. Murphy Oil Co., 93-2267 (La.App. 4th Cir.9/20/94), 643 So.2d 1291.
There can be more than one cause in fact of an accident as long as each cause bears a proximate relation to the harm that occurs and it is substantial in nature. A plaintiff seeking to recover under either negligence or strict liability theories must prove that the negligent act |12or defect complained of was a cause-in-fact of the injury. Davis v. State Farm Ins. Co., 558 So.2d 636 (La.App. 1st Cir.1990).
In Quick v. Murphy Oil Co., supra, the court found that:
WTien evaluating liability in an asbestos claim, we apply traditional theories of tort liability (for example, negligence and products liability) which require proof of causation. See Cole v. Celotex Corp., 599 So.2d 1058 (La.1992); Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986); Thompson v. Johns-Manville Sales Corp., 714 F.2d 581 (5th Cir.1983), cert. den. 465 U.S. 1102, 104 S.Ct. 1598, 80 L.Ed.2d 129 (1984). Asbestos cases typically involve multiple defendants and courts have analyzed the cases under concurrent causation, a doctrine which “proceeds from the assumption that more than one defendant substantially contributed to the plaintiffs injury.” 210 E. 86th Street Corp. v. Combustion Engineering, Inc., 821 F.Supp. 125, 150 (S.D.N.Y.1993).
93-2267 (La.App. 4th Cir.9/20/94), 643 So.2d 1291. *867 plained of to the extent that it was a substantial factor in bringing about his injury.” Asbestos v. Bordelon, Inc., 96-0525 (La.App. 4th Cir.10/21/98), 726 So.2d 926 at 948.
*866 In Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962), the Supreme Court stated that “conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm.” Id. The court stated that negligent conduct is a substantial factor if the harm would not have occurred without the conduct, i.e., but for defendant’s conduct, plaintiff would not have sustained injury. The court thereby equated the two concepts of substantial factor and necessary antecedent. Malone, Ruminations on Dixie Drive It Yourself Versus American Beverage Company, 30 La.L.Rev. 363, 373 (1970).
Quick makes clear that a plaintiffs burden of proof against multiple defendants in a long-latency case is not relaxed or reduced because of the degree of difficulty that might ensue in proving the contribution of each defendant’s product to the plaintiffs injury. Thus, in an asbestos case, “the claimant must show that he had significant exposure to the product com-
*867 Vodanovich, p. 3-4, 869 So.2d at 932-33. (emphasis added)
In the present matter, the only evidence that the Thibodeauxs supplied regarding the alleged exposure to products is that at some point in time between 1959 and 1984, Eagle was one of several suppliers of asbestos-containing products at Charity Hospital. The Thibodeauxs have not supplied any evidence that the asbestos was used at Charity Hospital while Mrs. Thibodeaux was there, nor was there any evidence submitted by the Thibodeauxs that she was actually exposed to asbestos-containing products from Eagle while she was at Charity Hospital.
Mr. Charles Cline was employed by Charity Hospital as an insulator from October 1959 until June 1984. He testified that during this period of time, insulation materials were ordered from at least five companies including, Eagle, Armstrong, McCarty-Branton, Taylor-Seidenbach, Orleans Material, and possibly one or two others. However, in his deposition, he does not note any specific dates as to when Charity Hospital ordered products from Eagle, nor does his deposition contain any evidence that products were ordered from Eagle between 1963 and 1966, when Mrs. Thibodeaux was employed by Charity Hospital.
In fact, Mr. Cline remembers that Eagle performed only one contract at Charity Hospital which occurred between 1975 and 1980. This was long after Mrs. Thibo-deaux left her employment at Charity Hospital. Additionally, at that time, Eagle was not using asbestos-containing materials on the job.
In its reasons for judgment, the district court specified that it granted the defendants motion for summary judgment,
[Bjecause at the hearing plaintiff failed to offer evidence demonstrating that Marie Thibodeaux was 114exposed to asbestos containing materials manufactured, supplied, or installed by Eagle, Inc. The [cjourt allowed plaintiff additional time to file a post-hearing memorandum in which the plaintiff was to provide evidence that linked Marie Thi-bodeaux’s exposure to asbestos to material manufactured, supplied or installed by Eagle, Inc. Plaintiff failed to file such a memorandum, as such, the [cjourt granted the defendants’... motion for summary judgment.”
As stated above in Vodanovich, Louisiana law requires that a plaintiff prove a defendant’s asbestos-containing product was a substantial factor in causing his alleged disease. In the instant case, the Thibodeauxs have not provided any evidence which would defeat Eagle’s motion for summary judgment. Additionally, “[ejvidence of the mere physical presence of asbestos-containing material is insufficient to find a manufacturer liable to a plaintiff.” Abram v. EPEC Oil Co., 05-0626, p. 6 (La.App. 4 Cir. 6/28/06), 936 So.2d 209, 213, citing, Roberts v. Owens-Coming Fiberglas Corp., 03-0248 (La.App. 1 Cir. 4/2/04), 878 So.2d 631, 642.
In Louisiana courts, “[tjhe initial burden of proof remains on the movant to show that no genuine issue of material fact exists. However, if the movant will not bear the burden of proof at trial, his burden on the motion requires him not to negate all essential elements of the plaintiffs claim, but rather to point out that there is an absence of factual support for one or more elements essential to the claim.” La. C.C.P. art. 966(C)(2); Fairbanks v. Tulane *868 University, 98-1228, p. 2 (La.App. 4 Cir. 3/31/99), 731 So.2d 983, 985. Clearly, in the matter sub judice, Eagle and OneBea-con have shown that there is an absence of factual support for one or more elements essential to the Thibodeauxs’ claim.
Therefore, based on our de novo review of this matter, we conclude that the 11Bdistrict court did not err in granting Eagle, Inc.’s and OneBeacon’s motion for summary judgment.
DECREE
Accordingly, the judgment of the district court is affirmed.
AFFIRMED.

. This Court notes that the Thibodeauxs are domiciled in East Baton Rouge Parish. In their petition for damages, the Thibodeauxs alleged that jurisdiction is proper in Orleans Parish because Mrs. Thibodeaux's exposure to asbestos containing products occurred in Orleans Parish.

. Specifically, we noted that the district court was exercising concurrent jurisdiction with the maritime claim.

. This Court notes that the Eagle Asbestos and Packing Company is the same named appellee in the instant case.