| | | |
|---|---|---|
| ODELL ALLEN, AUDRY ALLEN, NIHESHA ALLEN, AND LOLA ALLEN, INDIVIDUALLY AND ON BEHALF OF DECEDENT, JOYCE ALLEN | * <br> * <br> * <br> * | NO. 2022-C-0386 <br><br> COURT OF APPEAL <br><br> FOURTH CIRCUIT <br><br> STATE OF LOUISIANA |
| VERSUS | | |
| EAGLE INC., ET AL | * * * * * * * | |

**CONSOLIDATED WITH:**

**ODELL ALLEN, AUDRY ALLEN, NIHESHA ALLEN, AND LOLA ALLEN, INDIVIDUALLY AND ON BEHALF OF DECEDENT, JOYCE ALLEN**

**VERSUS**

**EAGLE INC., ET AL**

**CONSOLIDATED WITH:**

**NO. 2022-C-0387**

APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-01207, DIVISION "J"
Honorable D. Nicole Sheppard

\* \* \* \* \* \*
**Judge Roland L. Belsome**
\* \* \* \* \* \*

(Court composed of Judge Roland L. Belsome, Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins)

**JENKINS, J., CONCURS IN THE RESULT**


TINA L. KAPPEN
STEPHEN F. BUTTERFIELD
LUGENBUHL WHEATON PECK RANKIN & HUBBARD
601 Poydras Street, Suite 2775
New Orleans, Louisiana 70130

    COUNSEL FOR RELATOR/HARTFORD ACCIDENT AND
    INDEMNITY COMPANY

PAULA M. WELLONS
PAUL J. VERLANDER
DESIREE ADAMS
TAYLOR WELLONS POLITZ & DUHE, LLC
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112

COUNSEL FOR RELATORS/CERTAIN UNDERWRITERS AT
LLOYD'S LONDON and EDINBURGH ASSURANCE COMPANY
LIMITED

DAVID CANNELLA
CHRISTOPHER COLLEY
KRISTOPHER L. THOMPSON
BARON & BUDD, P.C.
2600 Citiplace Drive, Suite 400
Baton Rouge, Louisiana 70808

COUNSEL FOR RESPONDENTS/PLAINTIFFS

**WRITS GRANTED; RELIEF DENIED**
**AUGUST 10, 2022**

Defendants, Hartford Accident and Indemnity Company, Certain Underwriters at Lloyd's, London, and Edinburgh Assurance Company Limited (insurers for Lykes Bros. Steamship Co., Inc., "Lykes"), jointly seek supervisory review of the June 2, 2022 judgment denying their motions for summary judgment and the June 3, 2022 judgment denying their motions in *limine*.[1]  For the reasons that follow, we grant these writ applications and deny relief.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

In 2021, plaintiffs, Odell Allen ("Mr. Allen"), Audrey Allen, Nihesha Allen, and Lola Allen, filed a wrongful death and survival action arising out of the death of Joyce Allen ("Mrs. Allen"), wife and mother of plaintiffs.[2]  The petition alleges that Mrs. Allen died of lung cancer from exposure to asbestos brought home by Mr. Allen, while he was employed as a freight handler and longshoreman by multiple companies, including Lykes.

---

[1] This matter was initially brought for expedited consideration, but is now being considered by a regular panel of the Court.  The writ applications on the motions for summary judgment and the motions in *limine* have been consolidated herein.

[2] Mrs. Allen was diagnosed with asbestos-related lung cancer in January 2020.  She died in November 2020 before the petition was filed.

Defendants brought substantially similar motions for summary judgment asserting that plaintiffs have no factual evidence to show: (1) Mr. Allen handled asbestos while employed by Lykes; and (2) Mrs. Allen had take-home asbestos exposure attributable to Mr. Allen's employment with Lykes. Defendants also filed motions in *limine*, seeking to exclude and/or limit the testimony of plaintiffs' medical causation expert, Dr. Murray Finkelstein. As previously stated, the motions were denied and these writ applications followed. We will address each ruling in turn.

**LAW AND ANALYSIS**

***Motion for Summary Judgment***

Appellate courts review the grant or denial of a motion for summary judgment *de novo*, employing the same criteria that govern a trial court's determination of whether summary judgment is appropriate. *Maddox v. Howard Hughes Corp.*, 19-0135, p. 4 (La. App. 4 Cir. 4/17/19), 268 So.3d 333, 337 (citation omitted).

The standard for granting a motion for summary judgment is set forth in La. C.C.P. art. 966 (A)(3) which provides, in pertinent part, "a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law."

As this Court recognized in *Bercy v 337 Brooklyn, LLC*, 20-0583, pp. 3-4 (La. App. 4 Cir. 3/24/21), 315 So.3d 342, 345, *writ denied*, 21-00564 (La. 6/22/21), 318 So.3d 698,

> La. C.C.P. art. 966(D)(1) provides that on a motion for summary judgment, although the burden of proof rests with the mover, if the mover will not bear the burden of proof at trial, the

mover must only point out the absence of factual support for one or more elements essential to the adverse party's claim. The burden then shifts to the adverse party who has the burden to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

A genuine issue of material fact is one as to which reasonable persons could disagree, "if on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for trial on that issue, and summary judgment is appropriate." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751. "A fact is material when its existence or nonexistence may be essential to the plaintiffs [sic] cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Chapital v. Harry Kelleher & Co., Inc.*, 13-1606, p. 5 (La. App. 4 Cir. 6/4/14), 144 So.3d 75, 81. Whether a fact is material is a determination that must be made based on the applicable substantive law. *Roadrunner Transp. Sys. v. Brown*, 17-0040, p. 7 (La. App. 4 Cir. 5/10/17), 219 So.3d 1265, 1270 (citing *Smith*, 93-2512, p. 27, 639 So.2d at 751).

Regarding asbestos cases, this Court explained:

> The applicable law in asbestos cases is well-settled. To prove liability of a manufacturer or professional vendor of an asbestos-containing product, the plaintiff must show "he had sufficient exposure to the product complained of to the extent that it was a substantial factor in bringing about his injury." *Rando v. Anco Insulations, Inc.*, 2008-1163, 2008-1169, p. 35 (La. 5/22/09), 16 So.3d 1065, 1091 (citing *Asbestos v. Bordelon, Inc.*, 1996-0525, p. 30 (La. App. 4 Cir. 10/21/98), 726 So.2d 926, 948; *Vodanovich v. A.P. Green Industries, Inc.*, 2003-1079, p. 4 (La. App. 4 Cir. 3/3/04), 869 So.2d 930, 933). This standard of proof, developed by Louisiana courts over years of asbestos litigation, is known as the "substantial factor" test. Id. Stated differently, the plaintiff must prove, by a preponderance of the evidence that: (1) his exposure to the defendant's asbestos product was significant; and (2) that this exposure caused or was a substantial factor in bringing about his mesothelioma (or other asbestos-related disease).

3

> *Robertson v. Doug Ashy Bldg. Materials, Inc.,* 10-1551, p. 19 (La. App. 1 Cir. 10/4/11), 77 So.3d 360, 372 (citing *Rando,* 08-1163, 2008-1169, p. 38, 16 So.3d at 1092).

*Oddo v. Asbestos Corp. Ltd*., 14-0004, pp. 10-11 (La. App. 4 Cir. 8/20/15), 173 So.3d 1192, 1202.

In these writ applications, defendants assert that plaintiffs failed to present evidence at the summary judgment stage to sustain their burden of proving: (1) Mr. Allen's alleged exposure to asbestos occurred while employed by Lykes during the period of time defendants insured Lykes; and (2) medical causation to support their claim that Mrs. Allen died as a result of take-home asbestos exposure through Mr. Allen's employment with Lykes.

**Asbestos exposure attributable to Mr. Allen's employment with Lykes during defendants' policy periods**

In support of the motions for summary judgment in the present case, defendants argued that Mr. Allen was unable to remember specific details surrounding his employment with Lykes. Mr. Allen stated in his 2021 deposition that he worked asbestos cargo while employed by Lykes. Defendants submit that this testimony was elicited through a leading question posed by plaintiffs' counsel. Additionally, defendants assert that Mr. Allen's 2021 deposition testimony conflicts with statements provided in his 2004 deposition, where he was unable to recollect such exposure. In sum, defendants maintain that plaintiffs' attempt to show that Mr. Allen could have been exposed to asbestos while employed at Lykes, and that he carried that exposure home to Mrs. Allen, is too speculative to support their burden of proof in this instance.

Defendants also argue that Dr. Finkelstein, as stated in his deposition, had no opinion as to when Mr. Allen may have worked asbestos cargo for any particular

4

employer.  Moreover, he had no opinion relative to Lykes, *i.e.*, he had no specific information that Mr. Allen worked asbestos cargo while employed by Lykes. Thus, defendants assert that plaintiffs cannot support their contention that Mrs. Allen's alleged take-home exposure occurred during any of the relevant policy periods.

In opposition to the motions for summary judgment, plaintiffs relied on Mr. Allen's 2021 deposition testimony wherein he stated that he worked as a longshoreman and freight handler on the New Orleans Riverfront from 1968 until 1983.  Mr. Allen testified that he was employed by Lykes from 1970 until 1973, handling asbestos sacks and cargo.[3]  Plaintiffs maintain that any claim by defendants that Mr. Allen's testimony conflicts with his prior statements is a credibility determination to be presented to the trier of fact.  We agree.

As this Court has previously stated:

> The trial court cannot make credibility determinations on a motion for summary judgment. *Independent Fire Insurance Co. v. Sunbeam Corp.*, 99-2181, 99-2257, p. 16 (La. 02/29/00), 755 So.2d 226, 236. It is not the function of the district court on a motion for summary judgment to determine or even inquire into the merits of the issues raised. Additionally, the weighing of conflicting evidence has no place in summary judgment procedure. *See also Knowles v. McCright's Pharmacy, Inc.*, 34,559, p. 3 (La. App. 2 Cir. 4/4/01), 785 So.2d 101, 103.

*Thibodeaux v. Asbestos Corp.*, 07-0617, p. 4 (La. App. 4 Cir. 2/20/08), 976 So.2d 859, 862.  *See also Alberes v. Anco Insulations, Inc.*, 13-1549, pp. 4-5 (La. App. 4 Cir. 12/10/14), 156 So.3d 795, 798.

In his 2021 deposition, Mr. Allen testified that while working on the New Orleans riverfront, he moved all types of cargo, including asbestos sacks, in the hold of ships and on railway cars.  He explained that the sacks were dusty (white,

---

[3] Mr. Allen's Social Security earnings record, showing his employment with Lykes was produced in connection with his deposition

5

blue and other colors)[4] and often would get torn open.  When that occurred, Mr. Allen would sometimes have to sweep or shovel up the dust and put it in an extra bag.  Mr. Allen stated that he could get dusty from head to toe, but he never showered before going home.  He kept a sheet on his truck seat, which would also get dusty.  He explained that sometimes Mrs. Allen made him pull his clothes off at the door because they were too dusty and nasty.  Finally, Mr. Allen stated that Mrs. Allen laundered his clothing and truck sheet on a regular basis.

Nihesha Allen testified that she remembered her father coming home from work dusty.  She also stated that her mother stayed home and performed all the household chores, including the laundry.

Also in opposition to defendants' motions for summary judgment, plaintiffs submitted deposition and/or trial testimony of nine riverfront workers who testified that they handled asbestos cargo for Lykes during the same years as Mr. Allen.  Plaintiffs submitted this testimony to corroborate Mr. Allen's statements that Lykes' employees handled asbestos cargo.  Defendants objected to this testimony on the basis that none of the individuals claimed to actual be a co-workers of Mr. Allen.

***Medical Causation***

Plaintiffs introduced the report of Christopher DePasquale, MPH, CIH, their industrial hygienist expert.  Mr. DePasquale examined Mrs. Allen's medical records, discovery responses, Mr. Allen's deposition testimony, Social Security records, Mr. and Mrs. Allen's smoking history,[5] and the deposition testimony of

---

[4] Dr. Finkelstein stated in his deposition that "Canadian asbestos is white.  Crocidolite asbestos from Australia and South Africa is blue."

the other riverfront workers introduced by plaintiffs. Based on this information, Mr. DePasquale concluded that Mrs. Allen suffered exposures to asbestos through take-home exposure[6] resulting from Mr. Allen's work as a longshoreman/stevedore and freight handler.

Dr. Finkelstein's report and deposition testimony were also introduced into the record. Dr. Finkelstein reviewed medical records[7], Mr. Allen's 2000 and 2021 deposition testimony, discovery responses, and testimony of other riverfront workers. He concluded that "Mrs. Allen's take home exposures to asbestos (and possibly talc) dust, originating from dusts generated in the holds of vessels, from railcars, and elsewhere at the dock, were, along with second-hand exposure to cigarette smoke, substantial contributing causes of her fatal lung cancer."

Defendants assert that Dr. Finkelstein lacks any information to support a finding that Mrs. Allen's take-home exposures are linked to Mr. Allen's employment with Lykes. Defendants further submit that Dr. Finkelstein's conclusion (that Mrs. Allen suffered take-home exposure to asbestos) was based on assumptions that were unsupported by facts. More specifically, defendants point to Dr. Finkelstein's deposition testimony wherein he stated that his conclusions "are based on the presumption that Mr. Allen brought asbestos fibers home on his body and person, and he contaminated his car."

After our *de novo* review of the record, we find genuine issues of material fact as to whether Mr. Allen was exposed to asbestos during his employment with Lykes from the period 1970 until 1973. Moreover, considering the expert opinion

---

[5] It was noted that "Mrs. Allen was a lifelong non-smoker. Mr. Allen smoked intermittently, primarily when he spent time with friends. Mr. Allen never smoked inside the house."
[6] Mr. DePasquale reported that "[t]ake home exposure is well recognized in the industrial hygiene community as a pathway exposure. Much of the dust that settles onto the clothing and person of workers is carried home."
[7] Dr. Finkelstein noted in his deposition that Mr. Allen was diagnosed with asbestosis in 1999.

evidence regarding medical causation presented by plaintiffs, we find genuine issues of material fact as to whether Mrs. Allen's take-home asbestos exposure was a result of Mr. Allen's asbestos exposure while employed by Lykes. Thus, we find no error in the denial of defendants' motions for summary judgment.

**Motions in Limine**

Defendants argue that Dr. Finkelstein only presumed Mr. Allen carried home asbestos fibers in sufficient quantity to have exposed Mrs. Allen, causing her lung cancer. Thus, defendants maintain that Dr. Finkelstein's conclusion is not a reliable methodology to support an opinion that Mrs. Allen was exposed to asbestos as a result of Mr. Allen's employment with Lykes.

As a preliminary matter, we first address defendants' contention that the trial court committed legal error in failing to provide reasons for the denial of the motions in *limine*. This argument has merit.

The record reflects here that the trial court took the matter under advisement and denied the motions in *limine* summarily from the bench at a subsequent hearing on the motions for summary judgment. In denying the motions, the trial court failed to provide any reasons for her ruling in contravention of La. C.C.P. art. 1425 F, which provides, in pertinent part:

> (1) Any party may file a motion for a pretrial hearing to determine whether a witness qualifies as an expert or whether the methodologies employed by such witness are reliable under Articles 702 through 705 of the Louisiana Code of Evidence. The motion shall be filed not later than sixty days prior to trial and shall set forth sufficient allegations showing the necessity for these determinations by the court.

> (2) The court shall hold a contradictory hearing and shall rule on the motion not later than thirty days prior to the trial. At the hearing, the court shall consider the qualifications and methodologies of the proposed witness based upon the provisions of Articles 104(A) and 702 through 705 of the Louisiana Code of Evidence. For good cause shown, the court may allow live testimony at the contradictory hearing.

(3) If the ruling of the court is made at the conclusion of the hearing, the court shall recite orally its findings of fact, conclusions of law, and reasons for judgment. If the matter is taken under advisement, the court shall render its ruling and provide written findings of fact, conclusions of law, and reasons for judgment not later than five days after the hearing.

(4) The findings of facts, conclusions of law, and reasons for judgment shall be made part of the record of the proceedings. The findings of facts, conclusions of law, and reasons for judgment shall specifically include and address:

(a) The elements required to be satisfied for a person to testify under Articles 702 through 705 of the Louisiana Code of Evidence.

(b) The evidence presented at the hearing to satisfy the requirements of Articles 702 through 705 of the Louisiana Code of Evidence at trial.

(c) A decision by the judge as to whether or not a person shall be allowed to testify under Articles 702 through 705 of the Louisiana Code of Evidence at trial.

(d) The reasons of the judge detailing in law and fact why a person shall be allowed or disallowed to testify under Articles 702 through 705 of the Louisiana Code of Evidence.

Considering the trial court's legal error in failing to comply with the requirements of La. C.C.P. art. 1425 F, we review this matter *de novo*.

"Under the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (La. 1993), and adopted by our Louisiana Supreme Court in *State v. Foret*, 628 So.2d 1116, 1122 (La. 1993), the trial court is required to perform a "gatekeeping" function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Versluis v. Gulf Coast Transit Co.*, 08-0729, p. 5 (La. App. 4 Cir. 7/29/09), 17 So. 3d 459, 463 (citing *Daubert*, 509 U.S. at 589, 113 S.Ct. at 2795).

La. C.E. art. 702(A), which provides the standard for admissibility of expert testimony, states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

9

(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(2) The testimony is based on sufficient facts or data;

(3) The testimony is the product of reliable principles and methods; and

(4) The expert has reliably applied the principles and methods to the facts of the case.

The Supreme Court, in *Certain Underwriters at Lloyd's London v. United States Steel Corp.*, 19-1730, p. 3 (La. 1/28/20), 288 So.3d 120, 122, (quoting *Lafayette City-Parish Consol. Gov't v. Person*, 12-0307, p. 8 (La. 10/16/12), 100 So.3d 293, 298), found that an "expert may provide testimony based on information obtained from others, and the character of the evidence upon which the expert bases an opinion affects only the weight to be afforded the expert's conclusion." *See also MSOF Corp. v. Exxon Corp.*, 04-0988, p. 16 (La. App. 1 Cr. 12/22/05), 934 So.2d 708, 720 (wherein the First Circuit held that "the character of the evidence upon which the expert bases an opinion affects only the weight to be afforded the expert's conclusion . . . and may serve as a basis for attack by defendants on cross-examination at trial, but it does not make his opinion evidence inadmissible under *Daubert*.").

Defendants argue that Dr. Finkelstein relied on frequency, duration and proximity of asbestos exposure, while admitting he lacked any details as to those criteria. We disagree, as these factors affect only the weight to be afforded Dr. Finkelstein's opinion and may be raised in defendants' cross-examination at trial.

When asked in his deposition if he knew the frequency of Mr. Allen's exposure to asbestos, Dr. Finkelstein explained:

[W]e know he developed asbestosis. So asbestosis is a slowly developing progressive disease, which generally requires 10 or 20 fiber years of exposure to produce. So I presume that he himself would have had frequent, intense exposures. He would have brought home the dust on his clothing on those days when he himself was personally exposed. He would also at the time he was in his car leading to ongoing low-level exposure. And the dust he brought into his home would have remained there and accumulated there. So, Mrs. Allen would have had ongoing exposure from those sources.

Dr. Finkelstein conceded that he did not know the specific month or year that Mr. Allen worked asbestos for any particular employer and did not have an opinion about a specific month and year that Mrs. Allen's asbestos would be attributed to a particular employer. However, in support of his opinion, Dr. Finkelstein explained: "there are two parts to her exposure. One is direct exposure from laundering her husband's work clothing. The other exposure is the ongoing exposure coming from the contamination of her home. So asbestos brought home in January of 1973 could still be present in the home ten or more years later."

Considering our *de novo* review of the record, we conclude that Dr. Finkelstein's testimony and opinion regarding medical causation withstands defendants' *Daubert* challenge. Therefore, we find no error in the trial court's ruling.

**CONCLUSION**

For the foregoing reasons, find no error in the trial court's denial of defendants' motions for summary judgment and motions in *limine.* Accordingly, the writ applications are granted and relief is denied.

**WRITS GRANTED; RELIEF DENIED**

11